**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 25-11488

Non-Argument Calendar

————————————————

RHONDA JACKSON,

*Plaintiff-Appellant,*

*versus*

SUMTER COUNTY GEORGIA,

*Defendant-Appellee,*

————————————————

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 1:22-cv-00207-LAG

————————————————

Before GRANT, ABUDU, and ANDERSON, Circuit Judges.

PER CURIAM:

Rhonda Jackson appeals the district court's order granting summary judgment to her employer on her discrimination and retaliation claims.[1]  We affirm.

## I.

Rhonda Jackson had stage 4 chronic kidney failure, chronic obstructive pulmonary disease, and congestive heart failure.  The defendant concedes that these conditions constitute a disability.  When Covid-19 hit, Jackson took precautions: she sprayed Lysol, wiped down surfaces with Clorox, and wore a mask.

A little over two years into the pandemic, two of Jackson's coworkers complained that Jackson would spray them with Lysol when they entered the office.  As they worked, Jackson followed them, getting Lysol on their clothes and sometimes in their mouths.  After two months, they complained to Deatrice Harris, the Human Resources Director, describing the behavior as "highly offensive" and saying it made them uncomfortable to go into the office.

Harris investigated.  A witness confirmed that Jackson would walk behind the pair and spray Lysol on a "daily" basis.  Harris met with Jackson who "was shocked" because management had never told her that she "could not spray" and her coworkers had never said anything to her.

---

[1] Since filing the suit, Jackson has died, but her estate continues the suit.

After reviewing the evidence, Harris concluded that Jackson had targeted the two women and continued to spray them while they worked. She described the behavior as "harassment" and said it caused "an offensive and hostile environment." She recommended a written reprimand with additional discipline should Jackson not correct her behavior.

In response, Jackson filed a grievance. She said that the pair had a grudge against her and that, while she sprayed Lysol liberally, she "never sprayed directly on them." She also said she was "not attempting to harass anyone" but was "practicing safety precautions" to protect her health. She concluded by expressing her dissatisfaction with how Harris had communicated with her and her ultimate recommendations.

Sumter County Administrator Rayetta Volley had the final say. Before making a decision, she met with Jackson who reiterated that she sprayed Lysol to protect herself from Covid-19. After reviewing the evidence and the County policies, Volley concluded that Jackson had violated the harassment policy and fired her.

Jackson sued, claiming, as relevant to this appeal, that Volley violated the Americans with Disabilities Act (ADA) and the Rehabilitation Act by discriminating against her and retaliating against her for raising a grievance. The district court granted summary judgment to the defendants, and we affirm.

## II.

We review a grant of summary judgment de novo, "viewing all evidence and drawing all reasonable factual inferences in favor of the nonmoving party." *McCreight v. AuburnBank*, 117 F.4th 1322, 1329 (11th Cir. 2024) (quotation omitted). We grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (quotation omitted). There is a genuine issue of material fact when the evidence would allow a reasonable jury to decide for the nonmoving party. *Id.*

## III.

We first consider Jackson's discrimination claim under the ADA and the Rehabilitation Act before turning to her retaliation claim.

## A.

Under the ADA, employers may not "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). The Rehabilitation Act also bars such discrimination.[2] *Akridge v. Alfa Ins. Cos.*, 93 F.4th 1181, 1200 (11th Cir. 2024). We apply the

---

[2] The Rehabilitation Act requires plaintiffs to show that "they were discriminated against *solely* by reason of their disability" whereas the ADA requires plaintiffs to show only that their disability was a "but for" cause—a "determinative decision-making factor." *Akridge v. Alfa Ins. Cos.*, 93 F.4th 1181, 1200 (11th Cir. 2024) (alterations adopted and quotations omitted). Because Jackson's claims fail under either standard, we consider only the "lesser" ADA standard. *Id.*

same legal framework to claims brought under both statutes. *Todd v. Fayette Cnty. Sch. Dist.*, 998 F.3d 1203, 1214 (11th Cir. 2021).

To survive summary judgment, Jackson must "cite evidence that would allow a reasonable jury to find that the [County] terminated her employment and thus discriminated against her because of her disability." *Id.* A plaintiff may present "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination." *Akridge*, 93 F.4th at 1197 (quotation omitted). A convincing mosaic may include, "among other things, (1) suspicious timing, ambiguous statements, and other bits and pieces from which an inference of discriminatory intent might be drawn; (2) systemically better treatment of similarly situated employees; and (3) evidence that the employer's justification is pretextual." *Id.* at 1198 (alteration adopted and quotation omitted).

Jackson first argues suspicious timing, pointing to Volley's testimony that she learned of Jackson's disability shortly before scrapping the written warning for termination. But in another section of her brief, Jackson relies on her own testimony to argue that Volley knew of her disability at least six months before she fired her. Although Volley's testimony would better support a claim of suspicious timing, we do not "pick and choose bits" from the record to "string together." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1295 (11th Cir. 2012) (quotations omitted). Instead, "we credit the nonmoving party's version." *Id.* (quotation and emphasis omitted). Here, that means Jackson's account that she informed Volley of her disability months before her termination.

And six months is too long for suspicious timing.  *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007).

Jackson also argues that she was treated less favorably than her non-disabled coworkers.  Plaintiffs can compare themselves to other workers to prove discrimination, but only to those "similarly situated in all material respects."  *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019).  Based on the evidence in the record, only Jackson sprayed people with Lysol, so none of her coworkers were similarly situated.

Jackson also argues that she sprayed Lysol to protect herself because of her disability, so firing her for spraying Lysol was discriminatory.  But Jackson was free to protect herself with Lysol—as Volley testified, "everyone else in the office" was using Lysol, too.  The difference was that they were not spraying it on other people.  Jackson presents no evidence that her reason for spraying Lysol, rather than the fact that she was spraying it on others, drove her termination.

Finally, Jackson argues that Volley's justification was pretext for discrimination.  To establish pretext, Jackson must show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence."  *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1136 (11th Cir. 2020) (en banc) (quotation omitted).  The plaintiff must show both that the reason for termination was false and "that discrimination was the real reason."  *Akridge*, 93 F.4th at 1196

(quotation omitted). We focus "on the employer's beliefs"—an employer can fire someone "based on erroneous facts, or no reason at all" so long as the reason is not discriminatory. *Todd*, 998 F.3d at 1218 (quotations omitted).

Jackson's arguments do not come close to showing pretext. She first repeats her arguments about timing and the failure to discipline other employees, which fail for the reasons discussed above. Then she makes two arguments about the application of company policies.

*First*, she argues that normal policy would have resulted in written discipline. But, she says, when Volley learned of her disability, she changed her punishment to termination. This is just a rehashing of Jackon's timing argument, and, as discussed above, her own evidence forecloses this theory.

*Second*, Jackson argues that Volley misapplied the County's personnel policy by characterizing her actions as harassment even though she did not target the pair based on protected traits. But the policy does not limit harassment only to actions taken because of someone's protected status. So Jackson's argument does not expose weakness or incoherence in Volley's reasoning. *See Gogel*, 967 F.3d at 1136.

A reasonable jury could not infer intentional discrimination against Jackson based on this evidence, and the district court did not err by rejecting her discrimination claims. *See Akridge*, 93 F.4th at 1197.

**B.**

Next, Jackson argues that her firing violated the ADA and RA's prohibitions against retaliation.[3]   The ADA protects individuals from retaliation for "opposing an unlawful practice or making a charge under the ADA." *Frazier-White v. Gee*, 818 F.3d 1249, 1258 (11th Cir. 2016).   To demonstrate retaliation, Jackson "must show that: (1) she engaged in a statutorily protected expression, (2) she suffered an adverse employment action, and (3) there was a causal link between the two." *Id*.   Jackson must establish all three elements to prevail at summary judgment. *See Higdon v. Jackson*, 393 F.3d 1211, 1219 (11th Cir. 2004).

Jackson's claim fails because she did not engage in statutorily protected expression.   The grievance she filed failed to oppose a practice or make a charge under the ADA.   Instead, it presented Jackson's disagreements with the methods, findings, and conclusions of the investigation.   Any mentions of Jackson's health problems served to excuse her behavior, not to suggest that the investigation or recommendation were unlawful under the ADA.   So any responses to the grievance could not constitute retaliation. *See id*.

---

[3] As an initial matter, we note that Jackson's complaint arguably does not state such a claim.   The retaliation count cites 42 U.S.C. § 1981 and Title VII, and the only reference in that count to disabilities is "Plaintiff engaged in protected activity by filing a grievance due to the accusations of her co-workers and treatment by Defendant because of her disabilities."   Nevertheless, the district court and opposing party have all treated the complaint as if it raised those issues, and so will we.

Perhaps recognizing the problems with relying on the grievance, Jackson seeks to expand the scope of protected expression on appeal. But her complaint describes her "protected activity" only as "filing a grievance." And Jackson cannot expand her claim through briefing at summary judgment. *See Lightfoot v. Henry Cnty. Sch. Dist.*, 771 F.3d 764, 779 (11th Cir. 2014). The district did not abuse its discretion by declining to broaden its construction of Jackson's retaliation claim beyond the grievance. *See id.*

Without a genuine dispute of fact over protected activity, Jackson cannot present a story that would allow a reasonable jury to find retaliation, and so her claim must fail. *See Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1311 (11th Cir. 2023).

⋆      ⋆      ⋆

We **AFFIRM** the judgment of the district court.